**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x

In re: NOBLE TALENTS LLC,

                          Debtor.

----------------------------------------------------------x

                               Chapter 7

                               Case No.: 24-11230 (JPM)

## MEMORANDUM OPINION AND ORDER

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I.   INTRODUCTION

Before the Court is the *Chapter 7 Trustee's Objection Pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 to Claim No. 1 Filed by John Betts* (the "**Objection to Claim**") [Dkt. No. 73] filed by Deborah Piazza as the Chapter 7 Trustee (the "**Trustee**") on October 1, 2025.[1] The Objection to Claim seeks an order expunging the proof of claim (the "**Claim**")[2] of alleged creditor John Betts ("**Mr. Betts**") filed against Debtor Noble Talents LLC ("**Debtor**") under Section 502(b) and Bankruptcy Rule 3007.  Mr. Betts filed the Claim for $10,665,424.00 on November 18, 2024 and subsequently amended the Claim to $3,845,032.82 on October 16, 2025

Mr. Betts filed *John Betts' Response to the Chapter 7 Trustee's Objection to Proof of Claim No. 1* (the "**Response**") [Dkt. No. 75] on November 11, 2025.

On November 16, 2025, the Trustee filed the *Chapter 7 Trustee's Reply to the Opposition of John Betts to the Trustee's Objection to Betts' Claim* (the "**Reply**") [Dkt. No. 77].

---

[1] References to "Rule __" are to the Federal Rules of Civil Procedure.  References to "Bankruptcy Rule __" are to the Federal Rules of Bankruptcy Procedure.  References to "Local Rule" are to the Local Bankruptcy Rules for the Southern District of New York. References to "Bankruptcy Code" are to Title 11 of the U.S. Code (11 U.S.C). References to "Section 502(b)" are to 11 U.S.C. § 502(b).
[2] Mr. Bett's claim is included on the docket as Claim No. 1.

On December 5, 2025, Mr. Betts filed *John Betts' Response to Chapter 7 Trustee's Reply to the Opposition of John Betts to the Trustee's Objection to Betts' Claim* (the "**Sur-Reply**") [Dkt. No. 79].

For the reasons set forth below, the Objection to Claim is **GRANTED** and the Claim is expunged in its entirety.

## II.  PROCEDURAL HISTORY AND BACKGROUND

### a.  The Chancery Action

On June 11, 2020, certain preferred unitholders of Debtor (the "**Derivative Plaintiffs**") initiated a derivative litigation on Debtor's behalf against Mr. Betts in the Delaware Court of Chancery (the "**Chancery Court**") styled *Elutions Capital Ventures S.a.r.l., et al. v. John Betts, et al.*, C.A. 2020-0455-NAC (the "**Chancery Action**") by filing the *Verified Derivative Complaint* (the "**Derivative Complaint**") [Chancery Action, BL-1].  [Objection to Claim, p. 6].  The Derivative Plaintiffs filed an *Amended Verified Derivative Complaint* (the "**Amended Derivative Complaint**") [Chancery Action, BL-54] on March 10, 2021. [Chancery Action, BL-54].  The Amended Derivative Complaint alleged that Mr. Betts had (1) breached his "fiduciary duty resulting in the destruction of [Debtor's] value" and (2) "scuttled a $10.3 million sale of [Debtor's] wholly owned subsidiary, Noble International Bank, LLC."  [Chancery Action, Amended Derivative Complaint, p. 1-2].  The Derivative Plaintiffs alleged that Mr. Betts had interfered with the sale of Noble International Bank, LLC after "he had left his CEO position as part of a separation memorialized in a Confidential Separation and Release Agreement" (the "**Separation Agreement**").  [Objection to Claim, p. 6].

On March 30, 2021, Mr. Betts filed *Defendant's Answer to Plaintiff's Amended Verified Derivative Complaint, With Verified Counterclaims* (the "**Answer**") [Exhibit 3 of Objection to

2

Claim].  The Answer included multiple counterclaims asserting: (1) contractual breaches regarding the Separation Agreement, the Purchase and Separation Agreement (the "**Second Separation Agreement**"), and the Cooperation, Voting and Standstill Agreement (the "**Standstill Agreement**"); (2) breach of fiduciary duty as stockholders; (3) breach of fiduciary duty of care; (4) theft of trade secrets under the Delaware Uniform Trade Secrets Act, and (5) tortious interference with prospective economic advantage.  [Objection to Claim, Ex. 3, p. 4-5].  Mr. Betts alleged that he "suffered damages in an amount believed to be in excess of $25 million."  [*Id.*]

On April 19, 2021, the Derivative Plaintiffs moved to dismiss Mr. Betts' counterclaims.  [Objection to Claim, p. 7].  On February 2, 2022, the "Vice Chancellor in the Chancery Action…granted [the] motion" in an oral ruling and dismissed Mr. Betts' counterclaims.  [Objection to Claim].[3]  The Delaware Court of Chancery issued an order later that day dismissing Mr. Betts' counterclaims.  [Objection to Claim, exhibit 4].[4]

Thereafter, Mr. Betts filed *Defendant's Motion for Reargument Pursuant to Rule 59(f)* (the "**Motion for Reargument**").  [Objection to Claim, Ex. 6].  The Delaware Court of Chancery issued the *Denied* [*Proposed Form of Order] to Defendant's Motion for Reargument Pursuant to Rule 59(f)* (the "**Order Denying Reargument**") denying the Motion for Reargument on March 1, 2022, citing to "Ct. Ch. R. 15(aaa)."[5]  [Objection to Claim, Ex. 7, p. 4].  The Trustee argues that the

---

[3] The transcript of the Vice Chancellor's oral ruling addresses Count II, the breach of contract claim against the Derivative Plaintiffs. The Vice Chancellor stated that, while Mr. Betts "alleges that the [Derivative Plaintiffs] directed the company's officers to breach the company's contractual obligations to [Mr.] Betts under the [S]eparation [A]greement and the [Second Separation Agreement]," the Derivative Plaintiffs were not parties to any of those agreements and thus could not have breached those contracts.  [Objection to Claim, Exhibit 4, p. 33].  The Vice Chanceller held that "[Mr.] Betts has failed to state a claim for breach of contract against the [Derivative] Plaintiffs." [*Id.*, p. 34].

[4] The Chancery Court dismissed Count I, Breach of Fiduciary Duties; Count II, Breach of Contract Claim; Count III, Misappropriation of Trade Secrets; and Count IV, Tortious Interference with John Betts' Agreement in an oral ruling on February 2, 2022.  [Objection to Claim, exhibit 4].  The *Order Granting Plaintiff's Motion to Dismiss Defendant's Counterclaims* was docketed on February 2, 2022 by the Chancery Court.  [Chancery Action, BL-185].

[5] The Rules of the Court of Chancery of the State of Delaware were amended on May 31, 2024 and Chancery Court Rule 15(aaa) was amended to Chancery Court Rule 15(a)(5)(B).  [Del. Ct. Ch. R. 15(aaa)].  The Chancery Court relied upon Chancery Court Rule 15(aaa) throughout the proceedings in *Elutions Capital Ventures S.a.r.l., et al. v.*

"cited Chancery Court Rule 15(aaa)" in the Order Denying Reargument "provides that claims dismissed after a fully briefed motion to dismiss are dismissed with prejudice, unless the court finds such dismissal with prejudice is unjust."  [Objection to Claim, p. 7] [citing Ct. Ch. R. 15(aaa)].  Mr. Betts then attempted to "amend his answer, assert new counterclaims, and reassert already-dismissed counterclaims."  [*Id.*]. On October 24, 2022, the Chancery Court denied the motion with respect to the counterclaims, stating that "[Mr. Betts'] 'new' counterclaims are based on previously dismissed allegations" and are thus "denied." [cite to chancery court docket, Objection to Claim, Ex. 8, p. 16].

### b. The Bankruptcy Petition

Debtor filed a voluntary petition (the "**Petition**") pursuant to Chapter 7 of the United States Bankruptcy Code on July 15, 2024.  [Dkt. No. 1].  Under the title of Managing Member, Mr. Betts signed the Petition for Chapter 7 bankruptcy relief as an alleged authorized representative of Debtor.  [*Id.*, p. 4].  That same day, Mr. Betts removed the Chancery Action to the United States District Court for the District of Delaware (the "Delaware Federal Court").  [Objection to Claim, p. 8].

---

*John Betts, et al.*, C.A. 2020-0455-NAC.  Chancery Court Rule 15(aaa) originally provided that "a party that wishes to respond to a motion to dismiss under Rule 12(b)(6) or 23.1 by amending its pleading must file an amended complaint, or a motion to amend in conformity with this Rule, no later than the time such party's answering brief in response to either of the foregoing motions is due to be filed.  In the event a party fails to timely file an amended complaint or motion to amend under this subsection (aaa) and the Court thereafter concludes that the complaint should be dismissed under Rule 12(b)(6) or 23.1, such dismissal shall be with prejudice (and in the case of complaints brought pursuant to Rules 23 or 23.1 with prejudice to the named plaintiffs only) unless the Court, for good cause shown, shall find that dismissal with prejudice would not be just under all the circumstances.  Rule 41(a), 23(e) and 23.1 shall be construed so as to give effect to this subsection (aaa)." [Del. Ct. Ch. R. 15(aaa), *Amended* May 31, 2024].  Chancery Court Rule 15(a)(5)(B), which replaced Chancery Court Rule 15(aaa), provides that "if a party neither amends nor moves to amend by the time set forth in Rule 15(a)(5)(A), a dismissal under Rule 12(b)(6) or Rule 23.1 will be with prejudice—but only as to the named party—unless the Court for good cause shown dismisses the complaint without prejudice." [Del. Ct. Ch. R. 15(a)(5)(B)].  However, the amendments do not substantially alter the purpose of Chancery Court Rule 15(aaa) and this Court is not tasked with making any new determinations of dismissals with prejudice.  Thus, this Court will cite to the original form of Chancery Court Rule 15(aaa) when cross-referencing findings from the Chancery Action.

4

On July 29, 2024, Debtor filed the Official 206 Forms including 206 Summary of Assets and Liabilities, Schedule A/B: Property, Schedule D, and Schedule E/F (together, the "**Schedules**") [Dkt. No. 10].  In Schedule E/F, Mr. Betts is listed twice as a non-priority creditor under Part 2, Section 3.2 and 3.3.  [*Id*., 13].  Schedule E/F includes Mr. Betts as being owed $3,800,000.00 for a "severance [agreement]."  [*Id*.].  Schedule E/F also includes Mr. Betts as a non-priority creditor in an unknown amount based on the alleged breach of contract.  [*Id*.].  Mr. Betts signed off on the filing of the Schedules in his capacity as "Managing Member" of Debtor.  [*Id*., 18].  On November 18, 2024, Mr. Betts registered the Claim in the amount of $10,665,424.00 citing "[s]everance, [i]demnity, [d]amages, and/or [o]ther [o]bligations/[c]laims."  [*see* Claims Register, Claim 1-1, *In re Noble Talents LLC*, No. 24-11230].

On December 13, 2024, the Trustee was substituted as the plaintiff in the Chancery Action as it had been removed to the Delaware Federal Court.  [Objection to Claim, p. 9].  On February 25, 2025, a mediation session (the "**Mediation**") was held regarding the Chancery Action among the Trustee, Mr. Betts, and Allied World Assurance Co. Inc. ("**Allied**"), which served as "one of the insurance carriers under a directors and officers insurance policy tower that had been issued to [Debtor]."  [*Id*.].  The parties reached a settlement "whereby Allied agreed to pay to the Trustee under the [directors and officers insurance policy] the amount of $2.9 million in satisfaction of all of the Trustee's and the bankruptcy estate's claims against [Mr.] Betts, including those in the Chancery Action."  [*Id*.].

The *Stipulation of Settlement Among Chapter 7 Trustee, John Betts and Allied World Assurance Co. (U.S.) Inc.* (the "**Settlement Order**") [Dkt. No. 63] was so ordered by this Court on May 9, 2025.  [Settlement Order].  The Settlement Order stated that "all of the Trustee's and the estate's claims against [Mr.] Betts, and likewise, all of [Mr.] Betts' claims against the Trustee

and the estate, were released, except for [Mr.] Betts preserving his proof of claim, and the Trustee and the estate preserving the right to object thereto." [Objection to Claim, p. 10].

### c.  Claim Objection

On October 1, 2025, the Trustee filed the Objection to Claim on the grounds that Mr. Betts (1) failed to file supporting documentation, (2) was attempting to re-litigate dismissed counterclaims, and (3) had made attempts to game the system. [Objection to Claim]. Mr. Betts filed the Response on October 16, 2025, and amended the Claim down to $3,845,032.82. [Dkt. No. 75]. Mr. Betts did not provide an explanation in the Response as to why the Claim was reduced by $6,820,391.18. Mr. Betts asserted that "[Mr.] Betts' amended claim makes the [Objection to Claim] moot." [Response, p. 3]. The Response set forth the "basis for the amounts in the amended claim," including (1) the Severance Agreement, (2) COBRA reimbursements, (3) Legal Fees, (4) Advisory/Consulting Fees, and (5) Manager Fees. [Id., p. 6].

On November 16, 2025, the Trustee filed the Reply asserting that the amended claim was still insufficient. [Trustee's Reply]. The Trustee organized the Claim into four categories, combining the Severance Agreement and COBRA reimbursement categories that Mr. Betts had alleged in the Response. [Id., 3]. The adjusted components of the Claim listed by the Trustee are: (1) Manager Fees, (2) Severance/COBRA fees, (3) Advisory/Consulting Fees, and (4) Legal Fees. [Id.]. The Trustee again objected to all elements of the Claim set forth by Mr. Betts. While the Objection to Claim focused on the lack of supporting documentation submitted by Mr. Betts and issues surrounding collateral estoppel, in the Reply the Trustee objects extensively to the Manager Fees.

On December 5, 2025, Mr. Betts filed the Sur-Reply, asserting that the Response served as a "new claim objection to [Mr.] Betts' amended claim" and that "equities favor overruling the

[Objection to the Claim]." [Sur-Reply, p. 15].  Mr. Betts again argued that collateral estoppel and claim preclusion were not relevant to the Claim.

## III.   LEGAL STANDARD

### a.   Claim Validity

Section 502(a) of the Bankruptcy Code provides that "a claim of interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." 11 U.S.C. § 502.  Bankruptcy Rule 3001(f) states that "a proof of claim signed and filed in accordance with these rules is prima facie evidence of the claim's validity and amount."  Fed. R. Bankr. P. 3001(f).  However, "the burden then shifts to the claimant if the objector produces 'evidence equal in force to the prima facie case…which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'"  *See In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (citing *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173-174 (3d. Cir. 1992), quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)).  Finally, "when the burden is shifted back to the claimant, it must then prove by a preponderance of the evidence that under applicable law the claim should be allowed."  *In re Oneida* 400 B.R. at 389 (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000)); *see also In re Holm*, 931 F.2d at 263; *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

### b.   Collateral Estoppel and Res Judicata

The "preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred."  *New York v. Sokol* (*In re Sokol*), 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738); *see also Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state-court

judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). Thus, as the Chancery Action was adjudicated in Delaware, Delaware law is applicable on these issues. Under Delaware law, both "collateral estoppel and res judicata are related principles of law." *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 520 (Del. 1999), *as modified on denial of reargument* (May 27, 1999). "Res judicata bars a suit involving the same parties based on the same cause of action." *Id.*, 737 A.2d at 520. "Collateral estoppel prohibits a party from relitigating a factual issue that was adjudicated previously." *Id.*

The "test for applying the collateral estoppel doctrine requires that (1) a question of fact essential to the judgment (2) be litigated and (3) determined (4) by a valid and final judgment." *Id.* Separately, the test for *res judicata* requires:

> first, the original court must have had jurisdiction over the subject matter and the parties. Second, the parties to the original action must be the same as those parties, or their privies, in the current case. Third, the original cause of action, or the issues decided, must be the same in both cases. Fourth, the issues in the earlier action must have been decided adversely to the current plaintiff. Fifth, the decree in the earlier action was a final decree.

*Mott v. State*, 49 A.3d 1186, 1189 (Del. 2012), *as corrected* (Aug. 1, 2012).


## IV.    LEGAL ANALYSIS

The Court will evaluate the Claim in four separate categories: (1) Manager Fees, (2) Severance/COBRA Fees, (3) Advisory/Consulting Fees, and (4) Legal Fees.

### a. <u>No Disinterested Members Approved Mr. Betts Manager Fees and Thus the Purported Written Consent is Invalid</u>

Mr. Betts claims that he is owed $2,570,624.00 in Manager Fees by the Debtor. Mr. Betts bases the Manager Fees on the *Written Consent of the Sole Holder of Class B Common Units of Noble Talents LLC* (the "**Written Consent**") attached to the Response. [Response, Ex. H].

8

In the Response, Mr. Betts distinguishes the Manager Fees from the Advisory/Consulting fees that Mr. Betts claims he is owed. [Response, p. 12]. Mr. Betts asserts that from "January 2019 through approximately April 2019," while Debtor had no employees, "one of its affiliates, Noble Bank had employees." [*Id*.]. Mr. Betts argues that he was "required to assume management functions of the Debtor" and was in charge of "address[ing] a variety of other pertinent business matters, including …. legal matters such as government agency inquiries." [*Id*.]. Mr. Betts states that the "legal matters continued through 2024 and required a considerable amount of time and resources of [Mr.] Betts for which he has not [yet] been compensated, despite …. agreements with the Debtor [that] require [Mr.] Betts to be paid." [*Id*.]. Mr. Betts asserts that he "essentially resumed management of the company and largely did so until the Petition." [*Id*., p. 13]. The Trustee objects to the Manager Fees on the basis that the Written Consent was an "unauthorized, void, and invalid action under the terms of the [Debtor's] LLC [a]greement (the "**LLC Agreement**")." [Reply, p. 5].

The Court agrees with the Trustee. Mr. Betts claims that "on or around January 2019, [Mr.] Betts and the Debtor agreed that [Mr.] Betts would be paid $40,166 on a monthly basis for [Mr. Betts'] continued management services." [Response, p. 13]. Mr. Betts asserts that Debtor had only paid two payments of the monthly management fees and that sixty-four months of payment remain outstanding.[6] [*Id*.]. However, Mr. Betts is the only member who executed the Written Consent. This is in direct conflict with the LLC Agreement.

On the last page of the Written Consent, the signature block contains just one name and signature—Mr. Betts. [Response, Ex. H., p. 2]. Mr. Betts had signed the Written Consent as "John

---

[6] Mr. Betts claims that he received payment of $40,166 for January and February 2019. [Response, p. 13].

9

Betts, Sole Holder of Class B Common Units." [*Id*.]. At the time, Mr. Betts was both a unitholder member of Noble and a member of Debtor's Board of Managers. [Reply, p. 5].

Under Section 5.1 of the LLC Agreement, "business, property and affairs of the Company shall be managed, and all powers of the Company shall be exercised by or under the direction of the Board of Managers." [Reply, Ex. 2, p. 27]. Further, Section 4.7 of the LLC Agreement provides:

> Members shall have no power to participate in the management of the Company except as expressly authorized by this Agreement and except as expressly authorized by the Act.[7] No Member, acting solely in the capacity of a Member, is an agent of the Company nor does any Member, unless expressly and duly authorized in writing to do so by the Board of Managers, have any power or authority to bind or act on behalf of the Company in any way, to pledge its credit, to execute any instrument on its behalf or to render it liable for any purpose.

[*Id*., p. 22]. Thus, Mr. Betts, in his capacity as member unitholder, "had no power or authority under [the LLC] Agreement to bind [Debtor] or obligate [Debtor] to make any payments to [Mr.] Betts." [Reply, p. 6].

Moreover, even if Mr. Betts claims to have acted in his capacity as a member of the Board of Managers, his execution of the Written Consent was still prohibited under the LLC Agreement. Section 4.9(f) of the LLC Agreement states that Debtor shall not "enter into any transaction (directly or indirectly) with any employee, officer, director or equity holder of the Company …. other than transactions that have been approved in writing by a majority of the disinterested members of the Board of Managers"[8] without first "obtaining the prior approval …. of the holders

---

[7] The LLC Agreement defines "Act" in Section 1.1 as "the Delaware Limited Liability Company Act." [Reply, Ex. 2, p. 3].

[8] The Reply asserts that Debtor had three members that comprised the Board of Managers. [Reply, p. 7]. Mr. Betts became the "sole member of the Board of Managers after he removed [members] Ira Conklin and Grogg Bernstein." [*Id*.].

of at least a majority of the then outstanding Series A Preferred Units, voting together as a single

class on an as-converted basis." [Reply, Ex. 2, p. 22-23]. Mr. Betts makes no claim in any of his

filings that any of the 12 million Series A Preferred Units consented to the Written Consent.

Further, on January 4, 2019, before the Written Consent was executed, Mr. Betts ousted

fellow members of the Board of Managers—Ira Conklin and Grogg Bernstein—leaving Mr. Betts

as sole member of the Board of Managers. [Reply, p. 7]. Section 4.9(f) requires that any

transaction with an "employee, officer, director or equity holder of the Company" must be

"approved in writing by a majority of the disinterested members of the Board of Managers" (or by

majority of the Series A Preferred Units). [Reply, Ex. 2, p. 22-23]. Mr. Betts was not a

disinterested member when he alone signed the Written Consent. The execution of the Written

Consent plainly does not comply with the LLC Agreement and thus is not effective.

The Court finds that the Trustee has thus refuted an essential element of this category of

the Claim.[9] The Manager Fees are deemed unallowed and expunged.

b. **Mr. Betts' Severance/COBRA Fee Claims Are Barred by the Principles of Collateral Estoppel and Res Judicata**

As to the Severance/COBRA component of the Claim, Mr. Betts alleges that he is owed

$557,026.74 in severance and $54,661.78 in COBRA reimbursement payments for a total of

$611,687.82. [Response, p. 6]. These components of the Claim arise out of the Separation

Agreement and will be addressed together by the Court. [*Id*.].

Mr. Betts asserts that the Separation Agreement, executed on July 1, 2018, provided

$650,000 in severance payments to Mr. Betts and the continuation of Mr. Betts' healthcare through

COBRA payments. [*Id*., p. 6-7]. Mr. Betts claims that these COBRA payments were to be

---

[9] The Trustee presented additional arguments regarding the Manager Fees, including possible breach of fiduciary duty, breach of loyalty, and fraudulent conveyance. The Court finds that there is sufficient evidence to expunge the Manager Fees component of the Claim without ruling on these arguments at this time.

11

provided between January 2018 and January 2020.  Mr. Betts alleges that following the execution of the Separation Agreement, Debtor made certain severance payments to him totaling $92,973.95 but that he is still owed $557,026.44.  [*Id.*].

The Trustee alleges that Mr. Betts has already attempted to litigate claims falling under the Separation Agreement, and the Trustee objects to the Severance/COBRA component of the Claim based on collateral estoppel and res judicata.  [Reply, p. 10].  The Court agrees with the Trustee that this component of the Claim is barred by collateral estoppel and res judicata.

The Severance/COBRA component of the Claim stems in whole from the Separation Agreement.  However, Mr. Betts has already attempted to collect for breach of the Separation Agreement in the Chancery Action.  [Reply, p. 9].  After the Derivative Plaintiffs commenced the Chancery Action against Mr. Betts in 2020, Mr. Betts asserted counterclaims against the Derivative Plaintiffs.  [Objection to Claim, Ex. 3].  In the Answer, Mr. Betts asserted multiple claims against the Derivative Plaintiffs, including, a claim for breach of the Separation Agreement (Count II), and a claim for tortious interference with Mr. Betts' prospective economic advantage (Count IV). Further, the issue of whether Debtor breached the Separation Agreement was a predicate for Mr. Betts' tortious interference claim.  [Reply, p. 9].  Finally, Mr. Betts relied on similar arguments when asserting his affirmative defenses of estoppel (Eighth Defense), fraud (Ninth Defense), and illegality (Tenth Defense) in the Answer.  [Objection to Claim, Ex. 3].

In April 2021, the Derivative Plaintiffs moved to dismiss Mr. Betts' counterclaims, and on February 2, 2022, the Chancery Court granted the motion.  [Objection to Claim, Ex. 4].[10]  Mr. Betts subsequently filed a Motion for Reargument, a *Motion for Leave to Amend Answer and Add Counterclaims* (the "**Motion for Leave to Add Counterclaims**") [Chancery Action, Dkt. BL-

---

[10] The Order Granting Plaintiff's Motion to Dismiss Defendant's Counterclaims issued by the Chancery Court on February 2, 2022 can be found in the Objection to Claim, Exhibit 5.  [Objection to Claim, Ex. 5].

12

225], and a request for an interlocutory appeal.  [Objection to Claim, p. 7-8].  All of these efforts by Mr. Betts were denied by the Chancery Court based on the Chancery Court's previous reasoning in dismissing the counterclaims with prejudice.  [*Id.*].

In denying Mr. Betts' Motion for Reargument, the Chancery Court held that "the counterclaims do not put forward well-pleaded allegations that the [S]eparation [A]greement, [the Second Separation Agreement], or the [S]tandstill [A]greement were breached, much less that the plaintiff intentionally took actions that were a significant factor in any such breaches."  [Objection to Claim, Ex. 4, p. 38-39].

Mr. Betts argues that the principles of collateral estoppel and res judicata do not apply to Debtor's bankruptcy proceeding for multiple reasons, including that (1) the Chancery Court "never ruled on [Mr.] Betts' entitlement to a claim against the Debtor," (2) the "parties in the [C]hancery [A]ction were not the same [as] here," and (3)  "no finality has occurred in the [C]hancery [A]ction as there has been no finding of material fact."  [Response, p. 16-17].  The Court will consider each of these objections, and then the Court will consider the elements of the collateral estoppel and res judicata arguments

### i.  **Entitlement to a Claim**

Mr. Betts' first objection to the application of collateral estoppel and res judicata stems from the assertion that the Chancery Court did not make a determination or issue a ruling on Mr. Betts' entitlement to a claim.  [*Id.*].  Here, Mr. Betts confuses his right to file a proof of claim in this bankruptcy proceeding with his right to re-litigate potential claims arising from the Separation Agreement.

In dismissing Mr. Bett's counterclaims in 2022, the Chancery Court held that Mr. Betts had failed to present sufficient evidence showing that a breach of the Separation Agreement had

13

occurred. [Objection to Claim, Ex. 4, 38-39]. Further, in the Order Denying Reargument the Chancery Court held that "[Mr.] Betts restate[d] conclusory allegations that [Debtor] exercised control but (again) cites no well-pleaded facts from which such control can be reasonably inferred. [Objection to Claim, Ex. 7, p. 4]. In the Order Denying Reargument, the Chancery Court cited to Chancery Court Rule 15(aaa) finding that Mr. Betts' counterclaims had already been dismissed with prejudice. [*Id*.]. In an oral ruling on the Motion for Leave to Add Counterclaims on October 24, 2022, the Chancery Court again emphasized that "the [Chancery] Court dismissed all of Mr. Betts' counterclaims with prejudice." [Objection to Claim, Ex. 8, p. 5].

After this Chapter 7 proceeding was commenced, the original complaint filed by the Derivative Plaintiffs against Mr. Betts was removed from the Chancery Court to the Delaware Federal Court. [Objection to Claim, p. 9]. Meditation occurred between the Trustee (who stepped in to replace the Derivative Plaintiffs), Allied, and Mr. Betts. [*Id*.]. A settlement was ultimately reached between the parties. [*Id*.] The Settlement Order that was entered in May 2025 included a release of the claims of both the Trustee and the estate against Mr. Betts and vice versa. [*Id*., p. 10]. The only exception to the release was that Mr. Betts retained the right to file a proof of claim in the bankruptcy, and the Trustee retained the right to object to said claim. [*Id*.]. While the Settlement Order allowed Mr. Betts the right to file a proof of claim in the bankruptcy proceeding, it did not grant him the right to attempt to re-litigate issues stemming from his dismissed counterclaims.

### ii.   Same Parties or Privity of the Parties

Mr. Betts further claims that collateral estoppel and res judicata cannot apply because the parties are not the same and that "there is no privity-like relationship" between them. [Response, p. 17]. In the Chancery Action, the Derivative Plaintiffs filed the original claims against Mr. Betts.

14

However, under Delaware Law, "in a derivative action, it is not a named plaintiff, but the nominal defendant on whose behalf the plaintiff asserts claims, that is the real party in interest." *In re Wal-Mart Stores, Inc. Delaware Derivative Litig.*, 2016 WL 2908344, at *17 (De. Ch. May 13, 2016). Because the "preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the states where the prior action occurred …," Delaware law applies on this issue. *In re Sokol*, 113 F.3d 306. Since Debtor was the nominal defendant in the Chancery Action and effectively the real party in interest, the Court finds that there is privity between Debtor and the Derivative Plaintiffs.

### iii. Finality of the Judgment

Finally, Debtor argues that collateral estoppel and res judicata cannot apply because "no finality has occurred in the Chancery Action as there has been no finding of material fact and discovery has been stayed." [Response, p. 17]. The Court notes that the Chancery Action was not stayed. Mr. Betts' counterclaims were dismissed with prejudice by the Chancery Court and the original claims brought by the Derivative Plaintiffs were settled in the Mediation. [Objection to Claim, p. 9]. Under Delaware Law, "a dismissal with prejudice constitutes a final decree for res judicata purposes." *RBC Capital Markets, LLC v. Education Loan Trust IV*, 87 A.3d 632, 643 (2014); *See United Parcel Service v. Hawkins*, 314 A.3d 663 (2024) ("A dismissal with prejudice is considered a judgment on the merits.").

### iv. The Severance/COBRA Claim is Thus Barred by Collateral Estoppel and Res Judicata

In order for collateral estoppel to apply, the Court must find "(1) a question of fact essential to the judgment (2) be litigated and (3) determined (4) by a valid and enforceable judgment." *M.G. Bank corporation, Inc. v. Le Beau*, 737 A.2d at 520. The Court disagrees with Mr. Betts' argument that the Severance/COBRA component of the Claim is unique from the issues raised in the

15

counterclaims asserted in the Chancery Action. Here, a question of fact essential to the judgment—whether Debtor breached the Separation Agreement with Mr. Betts—was litigated in the Chancery Action and determined (dismissed with prejudice) by the Chancery Court. Thus, this Court finds that the Severance/COBRA Claim is barred by the doctrine of collateral estoppel.

In addition, Mr. Betts' Severance/COBRA claim is barred by the doctrine of res judicata. The five-factor test as articulated above in *Mott v. State* is satisfied here. *Mott*, 49 A.3d at 1189. First, the original court—the Chancery Court—had jurisdiction over the subject matter and the parties. Second, as previously established, the Court finds that there is requisite privity among the parties. Third, the issues are the same in both Mr. Betts' counterclaims and the Severance/COBRA claims filed here. Under Delaware law, courts have applied a "transactional approach to res judicata." [Objection to Claim, p. 13]. Under this transactional approach, successive claims based upon the same transaction or same contract, even if based on different legal theories, are barred under res judicata. [*Id*.]. *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 194 (Del. 2009); *Maldonado v. Flynn*, 417 A.2d 378, 382 (Del. Ch. 1980). Since this Court is bound to apply Delaware law and because the counterclaims brought in the Chancery Action arose from the Separation Agreement, the third element of res judicata is satisfied. Fourth, the issues in the Chancery Action were decided adversely to Mr. Betts when they were dismissed with prejudice. Fifth, dismissals with prejudice are considered final decrees. *Mott*, 49 A.3d at 1189. Thus, the Severance/COBRA component of the claim is expunged.

   c.   **Advisory/Consulting Fees**

As to the Advisory/Consulting Fees component of the Claim, Mr. Betts claims that Section 2.f. of the Separation Agreement "envisions and provides for a consulting role for [Mr.] Betts (beyond his continued work as a member of the [Debtor's] board of directors)." [Reply, p. 11].

Mr. Betts contends that the Advisory/Consulting Fees are owed for the period of July 2018 to March 2019 in the total amount of $350,000.  [*Id.*, p. 12].

The Court finds that the Advisory/Consulting Fees component of the Claim is barred for the reasons set forth *Supra* Section IV. Mr. Betts asserts in the Response that the Separation Agreement "envisions" a consulting role for Mr. Betts and that the Advisory/Consulting Fees are provided for under the terms of the Separation Agreement.  [Response, p. 11].  As discussed *Supra* Section IV, whether Debtor breached the Separation Agreement with Mr. Betts was already litigated and determined by the Chancery Court and thus is barred under the doctrine of collateral estoppel.  The five-factor test articulated in *Mott* also applies here and bars this component of the Claim under res judicata. *Mott*, 49 A.3d at 1189.

Moreover, the Court finds that Mr. Betts has not submitted necessary documentation to support the Advisory/Consulting Fees requested.  In the Response, Mr. Betts includes a chart listing four hundred and forty hours of service.  [Response, p. 44].  However, Mr. Betts does not present any supporting documentation "to substantiate the purported [four hundred and forty] hours he claims he spent assisting [Debtor]."  [Reply, p. 15].  "Bankruptcy courts have routinely held that if a proof of claim is 'not supported by the requisite documentation,' it 'is not presumed to be prima facie valid.'"  [Objection to Claim, p. 8]; *In re Bracato*, 2023 WL 5127334 *6 (Bankr. E.D.N.Y.); *Myer's Lawn Care Services, Inc. v. Robert Pryor*, 2024 WL 3716118 *19 (E.D.N.Y. 2024) (claim dismissed because the debtor failed to provide sufficient proof in support of its claim); *In re Aiolova*, 2013 WL 5811189, at *3 (Bankr. S.D.N.Y. 2013) ("If a proof of claim is not supported by the requisite documentation, it is not presumed to be prima facie valid.").

In addition, the Trustee alleges that any advisory or consulting fee claim arising out of the Separation Agreement is barred by the statute of limitations.  [Reply, p. 15].  Section 18 of the

17

Separation Agreement provides that "all matters pertaining to the validity, construction, interpretation and effect of this Agreement shall be governed by the laws of the State of New York.". [Reply, Ex. 13, p. 7]. Under New York Law, the statute of limitations for contractual claims in six years. N.Y. CPLR § 213(2). Mr. Betts, however, "did not raise a claim relating to Section 2.f. of the Separation Agreement until more than six years later, on October 16, 2025, the date upon which he filed the [Amended Claim in this bankruptcy]." [Reply, p. 15]. Thus, under New York Law, the Advisory/Consulting Fees are also barred by the statute of limitations.

### d. Legal Fees Are Not Supported by Appropriate Documentation Or Otherwise Sufficiently Established

As to the Legal Fees component of the Claim, Mr. Betts asserts that he is entitled to $312,721 in legal fees under the Separation Agreement. [Response, p. 8]. The Legal Fee Claim is broken down into two amounts: (1) $150,000 owed to Rothwell, Figg, Ernst & Manbeck, P.C. ("**Rothwell Figg**"), and (2) $162,721 to Hunton Andrews Kurth LLP ("**Hunton Andrews**"). [*Id*., p. 10]. Similar to the Advisory/Consulting Fees component of the Claim, the Legal Fees component of the Claim is not supported by the necessary documentation to substantiate Mr. Betts' claims.

Beginning with the first category, the only documentation provided by Mr. Betts is "reference to two purported promissory notes, each in the amount of $75,000." [Reply, p. 16]. These promissory notes were executed by Mr. Betts on behalf of Debtor in favor of Rothwell Figg. [*Id*.]. Because the "notemaker under the promissory notes was [Debtor], not [Mr.] Betts in his individual capacity," Mr. Betts has no personal obligation on the promissory notes to Rothwell Figg. [*Id*.]. The Court agrees with the Trustee that "to the extent those notes were valid, and [Debtor] never made any payments to Rothwell Figg owed thereunder, it was incumbent upon Rothwell Figg to have filed a claim in this case." [*Id*., p. 17]. Mr. Betts does not have a personal

18

obligation to Rothwell Figg and thus cannot collect these fees from Debtor on behalf of Rothwell Figg. As to the $162,721 allegedly owed to Mr. Betts' personal counsel Hunton Andrews, Mr. Betts submitted invoice summaries in support of this claim. [*Id.*, p. 16]. Mr. Betts asserts that under the Second Separation Agreement, Debtor was to cover "reimbursement …of legal fees incurred by [Mr.] Betts." [Response, p. 9]. Mr. Betts argues that the Separation Agreement and Second Separation Agreement provide reimbursement for legal fees. [*Id.*]. However, Mr. Betts fails to analyze the reimbursement provisions as a whole. Rather than permitting open-ended reimbursement for legal fees incurred by Mr. Betts, the Separation Agreement and Second Separation Agreement permit reimbursement under specific circumstances or for a particular purpose. [Reply, Ex. 13, p. 26]. Section 5 of the Separation Agreement states that Mr. Betts is only entitled to reimbursement of legal fees to the extent those fees were incurred "related to his resignation as Chief Executive Officer" upon the "presentation of an invoice." [*Id.*].

The simple recitation of these provisions along with two general invoices do not withstand the Trustee's objections that Mr. Betts has failed to provide sufficient evidence showing that (1) Mr. Betts has a personal obligation on the promissory notes to Rothwell Fig; (2) Mr. Betts has paid the Legal Fees in question, or (3) that the invoices supplied by Mr. Betts truly concern the Separation Agreement.[11]

Further, Mr. Betts has not presented sufficient evidence that any of the triggering events in the Separation Agreement or Second Separation Agreement had occurred (or any explanation of such triggering events) that would entitle him to potential legal fees. Thus, the Court cannot approve the second element of the Legal Fees component of the Claim.

The Trustee's objection is sustained and the Legal Fee component to the Claim is expunged.

---

[11] The Trustee notes that the invoices are dated for services provided "months after the fact." [Reply, p. 20].

19

## V.   CONCLUSION

For the reasons set forth above, the Court finds that the Trustee's Objection to Claim is

**SUSTAINED** and the Claim is **EXPUNGED** in its entirety.

**IT IS SO ORDERED**.

Dated: June 29, 2026
         New York, New York

                                         //s// John P. Mastando III
                                         Honorable John P. Mastando III
                                         United States Bankruptcy Judge